**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0208-21

ADAM DIPAOLO,

    Plaintiff-Appellant,

v.

BOARD OF EDUCATION
OF THE CITY OF NEWARK,
IN THE COUNTY OF ESSEX,

    Defendant-Respondent.

_____

Argued April 26, 2023 – Decided July 17, 2024

Before Judges Accurso, Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000093-21.

Colin M. Lynch argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC, attorneys; Colin M. Lynch, of counsel and on the briefs; Craig A. Long, on the briefs).

Teresa L. Moore argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Teresa L. Moore, of counsel and on the brief).

The opinion of the court was delivered by

VERNOIA, P.J.A.D.

Plaintiff Adam DiPaolo appeals from a Chancery Division order confirming an arbitrator's award upholding a tenure charge brought against him by defendant Board of Education of the City of Newark (Board) and dismissing his complaint seeking vacatur of the award. Plaintiff claims the arbitration award was procured through undue means and the court was therefore required to vacate the award under N.J.S.A. 2A:24-8(a). Unpersuaded by plaintiff's arguments, we affirm.

I.

The Board employed plaintiff as a certified elementary school teacher commencing in 2005 and continuing through the end of the 2018-2019 school year. In July 2019, the Board certified a tenure charge of inefficiency against plaintiff pursuant to N.J.S.A. 18A:6-17.3(a), which requires the filing of tenure charges against a public school teacher who "is rated partially effective in two consecutive annual summative evaluations . . . , except that the superintendent upon a written finding of exceptional circumstances may defer the filing of tenure charges until after the next annual summative evaluation."

A-0208-21

In its Notice of Tenure Charge of Inefficiency, the Board alleged plaintiff had been rated partially effective on his annual summative evaluations for three consecutive school years: 2016-2017, 2017-2018, and 2018-2019. The notice further alleged numerous deficiencies in plaintiff's teaching performance and sought plaintiff's dismissal from his tenured teaching position in the Newark School District and his suspension without pay pending disposition of the tenure charge.

In accordance with N.J.S.A. 18A:6-17.3(c), the New Jersey Commissioner of Education referred the tenure charge for disposition before an arbitrator. The arbitrator conducted a seven-day hearing during which the Board and plaintiff presented witnesses and evidence. Following completion of the hearing, the arbitrator rendered a forty-two-page decision sustaining the tenure charge.

In his thorough decision, the arbitrator summarized plaintiff's employment history in the Newark School District and the evaluations of plaintiff's performance as an elementary school teacher during the 2016-2017, 2017-2018, and 2018-2019 school years. The arbitrator explained that during those school years, teacher performance evaluations had been conducted using an established "Newark Board of Education Teacher Evaluation Framework for Effective Teaching" (Framework) and an associated numerical rubric the Board had

3

adopted in accordance with the Teacher Effectiveness and Accountability for the Children of New Jersey Act (the TEACHNJ Act), N.J.S.A. 18A:6-117 to -129.

The arbitrator detailed the five competencies (and their subparts) evaluated within the Framework, noted a teacher is graded in each competency as highly effective, effective, partially effective, or ineffective, and explained there is a numerical score assigned to each grade that is incorporated into the mathematical rubric.[1] The scores are totaled to determine if the teacher's overall performance is graded as highly effective, effective, partially effective, or ineffective.

The arbitrator also detailed the evaluations of plaintiff's teaching performance under the Framework and associated rubric during the 2016-2017,

---

[1] The five competencies are described as follows: Competency One - Lesson Design and Focus; Competency Two - Rigor and Inclusiveness; Competency Three - Culture of Achievement; Competency Four - Student Progress Toward Mastery; and Competency Five - Commitment to Personal and Collective Excellence. Under the Framework, each competency includes subparts that are separately graded based on the mathematical rubric in which four points are awarded for a highly effective rating, three points are awarded for an effective rating, two points are awarded for a partially effective rating, and one point is awarded for an ineffective rating. The arbitrator further described the manner in which the numerical rubric is applied in the calculation of mid-year and annual summative evaluations. We need not detail the mathematical calculations employed in the evaluations of plaintiff's teaching under the rubric because plaintiff does not challenge those calculations on appeal.

2017-2018, and 2018-2019 school years. More particularly, the arbitrator explained plaintiff had been assigned to teach a fourth-grade class at South Street School during the 2016-2017 school year. One of the school's vice principals, Elzira Prophete, conducted formal announced and informal unannounced observations of plaintiff's teaching in December 2016 and January 2017. Using the Framework and rubric, Prophete graded plaintiff as partially effective during his mid-year evaluation.

As found by the arbitrator, plaintiff complained to the school's principal, Havier Nazario, about Prophete's assessment and evaluations, but Nazario testified he also had conducted informal observations of plaintiff's teaching, and his assessment of plaintiff's teaching was consistent with Prophete's. Nonetheless, Nazario assigned a different vice principal, Rhonda Williamson-Green, to perform the formal evaluation of plaintiff's teaching during the second half of the 2016-2017 school year.

Williamson-Green conducted an unannounced formal evaluation of plaintiff on June 9, 2017, and graded plaintiff's teaching as partially effective. Plaintiff asked Williamson-Green to conduct a second evaluation, which Williamson-Green conducted and graded plaintiff's teaching as effective.

A-0208-21

As detailed by the arbitrator, Prophete completed plaintiff's final annual summative evaluation in accordance with the Framework and graded plaintiff's teaching as partially effective based on his score of ten out of a possible nineteen points on the rubric. Prophete testified the evaluation took into consideration "the totality of the administration's observations of" plaintiff, including Williamson-Green's observations and evaluations of plaintiff's teaching. In the final annual summative written evaluation, Prophete detailed numerous deficiencies in plaintiff's teaching to aid plaintiff's improvement the following year.

The arbitrator further noted plaintiff testified he had faced various challenges during the school year that he claimed had negatively impacted his performance and were overlooked by the evaluators. Plaintiff testified there were an unusually large number of students who could not speak English in his class and there were students with individualized education plans (IEPs) that "negatively affected his ability to make sure that [those] students were meeting their objective testing goals" in English language arts.[2] According to the

---

[2] "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child" and "must be drafted in compliance with a detailed set of procedures" that "emphasize collaboration among parents and educators[.]" Endrew F. ex rel. Joseph F. v. Douglas Cnty.

arbitrator, plaintiff also testified he had not received adequate support from the school administration to teach the children who did not speak English and noted he is "not credentialed to teach" English as a second language (ESL). The arbitrator further explained plaintiff testified he had received language support from another teacher from October through February, and thereafter "only sporadically."

The arbitrator also summarized the evidence concerning the 2017-2018 school year, noting the Board had assigned plaintiff to teach fourth grade at the Rafael Hernandez School that year. Because plaintiff had received an annual summative evaluation of partially effective for the prior school year, he was required to create with his supervisor a corrective action plan (CAP) establishing goals designed to "help guide [his] progress for the upcoming year, as well as to set a benchmark for future evaluations." Plaintiff met with vice principal Stephanie Vargas to develop the CAP, which was completed in October 2017 and revised by plaintiff in February 2018.

---

Sch. Dist. RE-1, 580 U.S. 386, 391 (2017) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982)). A state, such as New Jersey, that is "covered by the [Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 to 1482], must provide a disabled child with . . . special education and related services 'in conformity with the [child's] individualized education program,' or IEP." Id. at 390-91 (second alteration in original) (quoting 20 U.S.C. § 1401(9)(D)).

Vargas completed her first formal evaluation of plaintiff on October 11, 2017, and found plaintiff effective in two subparts of Competencies One through Four and partially effective or ineffective in the remaining eleven subparts of those competencies. The arbitrator explained Vargas had testified "she offered to co-plan and execute a lesson with" plaintiff following the first formal evaluation, but he offered "numerous reasons" he would not do so.

In late November 2017, Vargas conducted an informal evaluation and then met with plaintiff to formulate a plan for the lesson he would teach during an upcoming formal announced evaluation. Following the December 1, 2017 formal announced evaluation, Vargas rated plaintiff as partially effective, detailing plaintiff's strengths and weaknesses based on the Framework and rubric. The arbitrator found Vargas's formal evaluation also included "significant criticism, much of which carried over from [plaintiff's] previous evaluations" and highlighted the numerous subparts of the competencies in which Vargas rated plaintiff's teaching as partially effective or ineffective.

Vargas's subsequent mid-year evaluation of plaintiff yielded an overall rating of ineffective. The arbitrator noted the evaluation "is very long and detailed" and includes a partially effective rating in four competencies and an ineffective rating in one. The arbitrator summarized Vargas's detailed findings

A-0208-21

supporting her assessment of plaintiff's performance based on the Framework and the deficiencies in plaintiff's "lesson organization and time management," his need to give the students "rigorous work" and ensure that "classroom norms and routine are . . . followed[,]" and his failure to "post anchor charts" for the students, and noting plaintiff was "not on track" to satisfy the goals he had set in his CAP.

Another vice principal, Aprel King, evaluated plaintiff's teaching during the second half of the 2017-2018 school year. As detailed by the arbitrator, King rated plaintiff's teaching as partially effective in a March 22, 2018 evaluation.

Vargas completed the annual summative evaluation of plaintiff's teaching based on the formal and informal evaluations she had conducted, and the formal evaluation performed by King. The arbitrator found, and plaintiff does not dispute, that Vargas rated plaintiff as partially effective in the annual summative evaluation for the 2017-2018 school year.

The arbitrator further summarized plaintiff's testimony concerning his teaching performance during the 2017-2018 school year, explaining plaintiff had testified that the large number of children in his class with IEPs—which he estimated to be "more than half" of his class—"substantially increased the difficulty of his job." The arbitrator noted plaintiff had testified Vargas's

October 11, 2017 evaluation—in which she rated plaintiff's teaching as partially effective—was "overly harsh" because plaintiff was new to the school and was "just getting [his] footing." The arbitrator further summarized plaintiff's testimony concerning the evaluations performed during the school year, noting plaintiff's claims his teaching had been affected by medical issues of a family member and the children in his class with IEPs. The arbitrator further noted plaintiff's claim that during the December 1, 2017 class, those "children learned more . . . than sometimes you could ask for in a week."

As explained by the arbitrator, the evidence established the Board transferred plaintiff to the Cleveland Elementary School for the 2018-2019 school year. The Board assigned plaintiff to teach a fifth-grade class. Plaintiff co-taught the class with another teacher until that teacher retired in October 2018. Plaintiff thereafter assumed full responsibility for the fifth-grade class for the balance of the school year.

Again, because plaintiff had received a partially effective annual summative rating for the prior school year, he was required to complete a CAP for the 2018-2019 school year. Plaintiff worked with vice principal Dr. Shana Burnett to complete the CAP, which set various goals for plaintiff's performance.

A-0208-21

The arbitrator found that Burnett conducted an October 22, 2018 unannounced formal evaluation in which Burnett identified "growth areas for [plaintiff], and no strengths were observed." Burnett's evaluation identified the competencies in which she explained plaintiff required improvement and rated his performance as ineffective. The arbitrator noted plaintiff's testimony about the evaluation, during which he opined that while there were "some things" he had done during the class he felt were "great," he acknowledged there "were definitely some things . . . that [he] could have improved on," and that "students with IEPs or behavioral problems affected his rating."

Additionally, the arbitrator found Burnett conducted the second announced formal evaluation of plaintiff on January 11, 2019, and rated plaintiff's performance as partially effective and provided a "mid-year evaluation" rating of ineffective.

During the second half of the 2018-2019 school year, Cleveland Elementary School principal Erskine Glover performed two evaluations of plaintiff's teaching. As described by the arbitrator, the first informal evaluation conducted on March 6, 2019, and the second formal evaluation on May 10, 2019, yielded overall ratings of partially effective. In the final annual summative evaluation, Burnett rated plaintiff as ineffective overall. The arbitrator found

11

Burnett's evaluation "provided a very detailed review of all documented evaluations throughout that school year."

The arbitrator found that in conducting the evaluations during the three school years that resulted in the filing of the tenure charges, the Newark School District had completed the required number of evaluations each year and the evaluations were conducted by administrators who were "both authorized and qualified to" perform them. The arbitrator found each evaluator had used the identical Framework and rubric to assess plaintiff's performance and "[t]here were no substantial inconsistencies between the ratings generated by the observations and those provided in the mid-year and final evaluations" among those provided by the six different administrators at three different schools during the three school years at issue.

The arbitrator further noted, "[t]he testimony of the evaluators was detailed, corresponded to the educational judgments made each year with very specific recall of the evaluations each conducted," and the record was bereft of evidence the evaluators had "coordinated over their views of [plaintiff's] teaching performance or prejudged him prior to" conducting their evaluations. The arbitrator credited the testimony of the evaluators, finding "they calculated [plaintiff's] scores in good faith and using their best professional judgment."

The arbitrator further addressed and rejected plaintiff's claim the Board acted "arbitrarily and capriciously in its evaluation process." More particularly, the arbitrator rejected plaintiff's claim the evaluators had failed to consider the makeup of the classes he had been assigned to teach in assessing his effectiveness as a teacher. That is, the arbitrator was not persuaded by plaintiff's claim he had not received adequate administrative support in his various classes, which included "students with behavioral issues" and learning disabilities, and those who "did not speak English as a first language, or at all."

The arbitrator found plaintiff had taught students during the three school years who had "behavioral issues, learning disabilities, or weren't fluent in English" and that "having these students . . . presented challenges." The arbitrator, however, determined those circumstances "do not undermine the findings or ratings of the evaluators," and the arbitrator explained there was no evidence "the evaluators held [plaintiff's] students' difficulties against him as an educator and resulted in less than effective evaluations."

The arbitrator found no evidence "the deficiencies found in [plaintiff's] performance were the result of the makeup of the students in his class." The arbitrator found as fact that the evaluations supporting the tenure charges "centered mainly on teaching methodology and did not take the diversity of the

students into consideration as a factor that diminished or enhanced [plaintiff's] teaching methodology."  As the arbitrator explained, "[a]ll of the evaluations properly focused on [plaintiff's] teaching methodology and professionalism in relation to his students' performance, rather than on the students' perceived inabilities to match their performance to [plaintiff's] expectations."  The arbitrator found "no evidence that the presence of special needs students in [plaintiff's] class negatively impacted on the criteria upon which" the six different evaluators in three separate schools had consistently determined plaintiff was only partially effective as a teacher.

The arbitrator concluded the evaluators had "followed the Framework and [r]ubric, made detailed observations and scored the results based on the ratings that reflected the overall performance rating[s]"—partially effective for the 2016-2017 and 2017-2018 school years, and ineffective for the 2018-2019 school year—such that the Board sustained its burden of proving the tenure charge against plaintiff.  The arbitrator therefore rejected plaintiff's claim the Board had acted in an arbitrary and capricious manner in seeking termination of plaintiff's tenure.  See N.J.S.A. 18A:6-17.2(a)(4).

Moreover, the arbitrator further explained that under the TEACHNJ Act, he was required to determine if the Board's actions materially affected the

outcome of the evaluations, see N.J.S.A. 18A:6-17.2(b), even if the Board had acted in an arbitrary and capricious manner by assigning plaintiff to the various classes and evaluating his performance in those classes. The arbitrator found no evidence supporting a finding that any alleged arbitrary and capricious action in assigning plaintiff to the classes or evaluating his performance in the classes to which he had been assigned, had materially affected the evaluations. The arbitrator noted the consistency and comprehensiveness of the evaluations over the three school years, the various administrators' efforts to support improvement in plaintiff's performance, and plaintiff's "seeming inability to adjust [to] his supervisors' expectations." The arbitrator found "the observations were conducted fairly and in accordance with the Framework and the applicable statutes" and that neither plaintiff's "criticism of the evaluation process . . . nor the totality of the criticisms alleged, were material to the outcome of his evaluations[.]"

The arbitrator entered an award finding the Board had established by a preponderance of the evidence that the tenure charge of inefficiency should be sustained. Plaintiff filed a verified complaint and order to show cause seeking vacatur of the award. The Board filed an answer to the complaint and a motion

seeking dismissal of plaintiff's complaint and confirmation of the arbitration award.

After hearing arguments on the parties' requests for relief, the court issued a detailed written decision dismissing plaintiff's complaint and confirming the arbitration award. The court found the arbitrator "unquestionably conducted his analysis as required under the [TEACHNJ] Act, and his decision and award are consistent with his obligations."

The court noted plaintiff's claims he had been assigned to classes with several students who did not speak English, he lacked a bilingual teaching certification and adequate support in the classroom, and he had been "unlawfully assigned" special needs students with IEPs "in excess of his teaching certification." The court explained the arbitrator had considered and rejected those claims, and the court concluded the students' circumstances did not undermine the bases on which the evaluations were founded. The court observed that the arbitrator had found the evaluations "centered mainly on teaching methodology and did not take the diversity of the students into consideration as a factor that diminished or enhanced [plaintiff's] teaching methodology[,]" and "'[a]ll the evaluations properly focused on [plaintiff's] teaching methodology and professionalism in relation to his students'

16

performance, rather than on the students' perceived inabilities to match their performance to [plaintiff's] expectations.'"

The court found no basis in the record to conclude the arbitration award was procured through undue means or in any other manner supporting vacatur of the award under N.J.S.A. 2A:24-8. The court entered an order confirming the award and dismissing plaintiff's complaint. This appeal followed.

II.

Prior to addressing the arguments presented by plaintiff in support of his appeal, we summarize the legal principles that guide our analysis.

Contested tenure charges filed under the TEACHNJ Act "must be submitted to arbitration." Sanjuan v. Sch. Dist. of W. N. Y., 256 N.J. 369, 379 (2024). The arbitrator's decision "shall be final and binding and may not be appealable to the [C]ommissioner [of Education] or the State Board of Education." N.J.S.A. 18A:6-17.1(e). An arbitrator's decision on tenure charges "shall be subject to judicial review and enforcement as provided pursuant to" the New Jersey Arbitration Act, "N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10." Ibid.

Under the TEACHNJ Act, the arbitrator's role is limited. Where, as here, "the matter before the arbitrator is employee inefficiency, then four factors shall

be considered by the arbitrator in rendering a decision[.]" Pugliese v. State-Operated Sch. Dist. of City of Newark, 440 N.J. Super. 501, 509 (App. Div. 2015). In rendering a decision on a charge of inefficiency, an arbitrator "shall only consider whether or not:"

> (1) the employee's evaluation failed to adhere substantially to the evaluation process, including, but not limited to providing a [CAP];
>
> (2) there is a mistake of fact in the evaluation;
>
> (3) the charges would not have been brought but for considerations of political affiliation, nepotism, union activity, discrimination as prohibited by State or federal law, or other conduct prohibited by State or federal law; or
>
> (4) the district's actions were arbitrary and capricious.
>
> [N.J.S.A. 18A:6-17.2(a)(1) to (4).]

Additionally, where a teacher establishes grounds falling within any of the four subsections of N.J.S.A. 18A:6-17.2, the arbitrator must make an additional determination. The arbitrator "shall then determine if" the facts supporting an application of one or more of the subsections "materially affected the outcome of the evaluation[s]" on which the tenure charges are based. N.J.S.A. 18A:6-17.2(b). And, "[i]f the arbitrator determines that" the grounds falling within a one or more of the subsections of N.J.S.A. 18A:6-17.2(a) "did not materially

18

affect the outcome of the evaluation, the arbitrator shall render a decision in favor of the board and the [teacher] shall be dismissed." Ibid.

The TEACHNJ Act further bars the arbitrator from considering the evaluator's assessment of the quality of a teacher's performance. The statute provides, "[t]he evaluator's determination as to the quality of [a teacher's] classroom performance shall not be subject to an arbitrator's review." N.J.S.A. 2A:6-17.2(c).

"'Judicial review of an arbitration award is very limited.'" Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). We "review decisions on motions to vacate an arbitration award de novo," Sanjuan, 256 N.J. at 381, and "we owe no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts," Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018). Our de novo review, however, is also guided by "New Jersey's 'strong preference for judicial confirmation of arbitration awards.'" Sanjuan, 256 N.J. at 381 (quoting Middletown Twp. PBA Loc. 124 v. Twp of Middletown, 193 N.J. 1, 10 (2007)).

As our Supreme Court has explained, judicial review of an arbitration award rendered under the TEACHNJ Act is subject to, and "further circumscribed by," the requirements of "N.J.S.A. 2A:24-7 through N.J.S.A. 2A:24-10." Ibid. (quoting N.J.S.A. 18A:9-17.1(e)). Thus, "[t]he grounds for setting aside a tenure case arbitrator's decision . . . are narrow." Morison v. Willingboro Bd. of Educ., 478 N.J. Super. 229, 241 (App. Div. 2024). A court may "only vacate the decision if one of four statutory grounds" set forth in N.J.S.A. 2A:24-8 "is demonstrated." Ibid. N.J.S.A. 2A:24-8 provides that a court "shall" vacate an arbitration award "in any of the following cases:"

> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> (d) Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> . . . .
>
> [N.J.S.A. 2A:24-8.]

20

Plaintiff contends the court erred by failing to vacate the award because the award was procured by undue means under N.J.S.A. 2A:24-8(a).  See Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 203 (2013) (explaining in part that N.J.S.A. 2A:24-8(a) mandates vacatur of an award where it is "procured by . . . undue means").  Plaintiff does not claim the arbitration award should have been vacated under subsections (b), (c), or (d) of N.J.S.A. 2A:24-8.  We therefore do not address those subsections of the statute. See ibid. (explaining the Court limited its analysis of an appeal from an order vacating an arbitration award to whether the award had been procured through undue means under N.J.S.A 2A:24-8(a) because the appellant had argued only that the award should be vacated on that basis).

The Supreme Court has explained that "'undue means'" under N.J.S.A. 2A:24-8(a) "'ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record.'"  Sanjuan, 256 N.J. at 382 n.1 (quoting Borough of E. Rutherford, 213 N.J. at 203).  Undue means has also been construed to include "basing an award on a clearly mistaken view of fact or law."  Local Union 560, I.B.T. v. Eazor Express, Inc., 95 N.J. Super. 219, 227-28 (App. Div. 1967).

21

Here, plaintiff's argument is twofold. He claims the arbitrator erred in the first instance by failing to conclude the Board acted arbitrarily and capriciously under N.J.S.A. 18A:6-17.2(a)(4) by relying on evaluations of his teaching performance in classes he contends he was not certified to teach. He also contends the motion court erred by rejecting his claim the arbitration award was procured by undue means, see N.J.S.A. 2A:24-8(a). That claim is founded on the contention that the arbitrator committed legal error by failing to recognize that plaintiff's assignment to teach the classes, and the resultant evaluations of his teaching performance in those classes, were unlawful and violated public policy because plaintiff did not possess the appropriate certifications to teach them.

Plaintiff does not, and cannot, challenge "[t]he evaluator[s'] determination[s] as to the quality of [his] classroom performance" by the six administrators who assessed his teaching under the Framework and associated rubric over the three school years at issue. N.J.S.A. 18A:6-17.2(c). The evaluators consistently and uniformly rated plaintiff's teaching performance as partially effective or ineffective such that by definition, the Board was required to file tenure charges for inefficiency under the TEACHNJ Act. N.J.S.A. 18A:6-17.3(a)(2). The evaluations, finding plaintiff's teaching performance partially

effective for the 2016-2017 and 2017-2018 school years, and ineffective for the 2018-2019 school year, provide sufficient evidence sustaining the tenure charge of inefficiency filed by the Board. Ibid.

Instead, plaintiff seeks refuge from those evaluations and the arbitrator's determination based on his claim that the arbitration award violates the law and public policy because he was evaluated teaching classes for which he was not certified. However, plaintiff's oft-repeated claim the evaluations supporting the tenure charges are invalid as a matter of law because he was assessed while teaching classes for which he was not certified is undermined by the record.

At all times during his employment by the Board, plaintiff possessed a valid "elementary school" teaching certificate. The certificate authorized plaintiff to "[s]erve as an elementary school teacher in kindergarten through grade six in all public schools" in the State of New Jersey. N.J.A.C. 6A:9B-9.3(b)(2).[3] The certificate further authorized plaintiff to teach "language arts

---

[3] Plaintiff testified that when he first received his teaching certificate, it authorized him to teach grades kindergarten through eighth grade and that he had been "grandfathered in" to continue teaching all those grade levels after the regulation, N.J.A.C. 6A:9B-9.3(b)(2), was amended to limit elementary education certifications to grades kindergarten through sixth. In any event, the change in the regulation is of no moment because plaintiff taught only fourth and fifth grades during the three years for which plaintiff's teaching performance was evaluated.

A-0208-21

literacy, mathematics, science, computer and information literacy, and social studies full-time," as well as "world languages full-time," in kindergarten through sixth grade. Ibid.

As found by the arbitrator, and as established by the record, plaintiff taught fourth-grade classes during the 2016-2017 and 2017-2018 school years and a fifth-grade class during the 2018-2019 school year. During each of those years, plaintiff possessed the State-issued teaching certification required to teach the elementary school classes to which he was assigned, and it was his performance teaching those classes for which the evaluators—six different administrators in three separate schools—rated his teaching as partially effective or ineffective for three consecutive years.

Plaintiff's contention he was not certified to teach the classes to which he was assigned and for which his teaching performance was evaluated ignores that the Board assigned him to teach, and he taught, elementary school classes for which he had a valid State-issued certification. Plaintiff also ignores that based on the evaluators' assessments of his teaching—as required by the Framework— he consistently taught the classes for which he was fully certified in either a partially effective or ineffective way.

Plaintiff argues that despite his State-issued certification to teach the classes, the presence of limited or non-English speaking students during the 2016-2017 school year and students with IEPs during the 2017-2018 and 2018-2019 school years rendered those assignments unlawful and his evaluations invalid because he was not certified to teach those students. We are unpersuaded.

Although there was conflicting evidence concerning the number of non-English speaking and English language learners in plaintiff's 2016-2017 class, it is undisputed that six of the twenty-four students in the class had been classified as requiring some level of bilingual or English language services in the classroom.[4] See generally N.J.A.C. 6A:15-1.2 (defining in part various types of bilingual and ESL programs that may be provided to English language learners in public schools). Of course, that means eighteen of the students in plaintiff's class had not been classified as requiring any bilingual education or other English language instruction, and plaintiff was fully certified to teach

---

[4] The nature and type of the bilingual and ESL services and programs to which a student is entitled is dependent on a screening process to determine English language proficiency. N.J.A.C. 6A:15-1.3(a) and (b). The record on appeal does not include the assessments or determinations of the English language proficiencies performed such that the nature and extent of the bilingual or other services to which any of the students in plaintiff's 2016-2017 class were owed may be determined.

those students in the classes to which he had been assigned. Plaintiff does not dispute he possessed the certification to teach those students and that he had a responsibility to teach each of those students effectively in a manner consistent with the TEACHNJ Act.

The evidence further established that the evaluators determined plaintiff's teaching performance of those students was only partially effective over the course of the 2016-2017 school year. And, as the arbitrator found, and as the evidence established to the arbitrator's satisfaction, the evaluators' assessments of plaintiff's teaching performance were focused on deficiencies in his teaching methodology and were unrelated to the composition of the students and the various challenges the students in the class presented.

To be sure, the Board is required to provide appropriate services to students "of limited English-speaking ability" under the Bilingual Education Act, N.J.S.A. 18A:35-15 to -26, and the regulations promulgated pursuant to the Act, see N.J.A.C. 6A:15-1.1 to -1.16. We need not detail the requirements of the Act and its regulations other than to note that they do not prohibit a student of limited English-speaking ability from being taught in a classroom with English-speaking students, and plaintiff does not cite to a statute or regulation that renders unlawful or improper the assignment of a teacher holding an

26

elementary school certificate to teach an elementary school class that includes some students of limited English-speaking ability.

Plaintiff correctly notes that the statute and regulations require that the Board provide services to students of limited English-speaking ability. See generally N.J.S.A. 18A:35-18; N.J.A.C. 6A:15-1.4. However, the nature and extent of English language services a board must provide to limited English speaking students are dependent on, and defined by, mandated assessments of the students' respective English language capabilities. See N.J.A.C. 6A:15-1.3(a) and (b). The record, however, lacks the assessments and the resultant determinations defining the particular services, if any, the Board was required to provide to the six limited English-speaking students in plaintiff's 2016-2017 class. Thus, plaintiff's claim the Board failed to provide the students with the required English language support he contends they were entitled to in his class constitutes nothing more than a conclusory assertion unsupported by the only evidence—the putative but required assessments and resultant recommendations—that would have properly defined the services to which the students may have been entitled. See ibid. And, for that reason alone, we reject his contention the Board acted in an arbitrary, capricious, and unlawful manner,

see N.J.S.A. 18A:6-17.2(a)(4), by assigning him to teach the class and by evaluating his performance teaching the class.

We also reject the claim for a separate but equally dispositive reason. Although the record does not support a finding the Board failed to provide required services to any limited English-speaking students,[5] plaintiff was nonetheless the teacher assigned to instruct all the students in his fourth-grade class—including the eighteen students he concedes were not limited in English language skills—in an effective manner as determined under the Framework. That is, any failure of the Board to provide the students with the resources to which they were entitled did not relieve plaintiff from his obligation and duty to teach the students in the class effectively, and the evaluators, who were fully familiar with composition of the class, determined plaintiff's teaching in the class was only partially effective.

Additionally, there is no evidence the evaluators assessed plaintiff's performance as anything other than the fully-certified elementary education

---

[5] We note there was conflicting evidence concerning the English language support services that were provided in plaintiff's class during the school year. There was testimony that a certified bilingual education instructor provided daily English language support services from October 2016 through March 2017, and Nazario testified he recalled those services being provided through the end of the school year. There was also evidence that an aide provided English language services during the school year to students in the class.

teacher he was. His teaching was not evaluated based on his performance as a putative bilingual education or ESL teacher or in any capacity other than a general education elementary school teacher.[6] Further, and as noted, the arbitrator determined the evaluations of plaintiff's performance were unaffected by the student composition of the class, and we are bound to defer to that finding because it is supported by substantial credible evidence. See Sullivan v. Bd. of Rev., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (noting that we must defer to an administrative agency's findings if those findings are based on sufficient credible evidence in the record).

For those reasons, we reject plaintiff's claim the Board acted in an arbitrary and capricious manner under N.J.S.A. 18A:6-17.2(a)(4), by assigning plaintiff to teach his 2016-2017 class. We further discern no basis to reject the court's determination that the arbitrator's decision, to the extent it accepted the

---

[6] We recognize that "[a]ll teachers of bilingual classes shall hold a valid New Jersey instructional certificate with an endorsement for the appropriate grade level and/or context area" as well as an endorsement in "bilingual/bicultural education[,]" N.J.A.C. 6A:15-1.8(a), and "[a]ll teachers of ESL classes shall hold a valid New Jersey instructional certificate with an ESL endorsement[,]" N.J.A.C. 6A:15-1.8(b). Absent any evidence establishing the English language services, if any, to which the students in the class required, it is not possible to determine if the Board failed to provide adequate services—including those from a certified bilingual or ESL teacher—to any students in the class.

arbitrator's reliance on the evaluations of plaintiff's teaching during that school year, was not procured by undue means under N.J.S.A. 2A:24-8(a).

Defendant similarly seeks to avoid responsibility for his consistent but only partially effective teaching during the 2017-2018 school year and ineffective teaching during the 2018-2019 school year by attributing his deficiencies to the fourth- and fifth-grade special education students with IEPs. We reject defendant's claim because it suffers from the same fatal infirmities as his assertion that he could not be properly evaluated during the 2016-2017 school year.

Plaintiff argues his teaching assignments during the 2017-2018 and 2018-2019 school years were unlawful—and therefore resulted in evaluations based on an assessment of classes he could not lawfully teach—because the number of students with IEPs in those classes exceeded those permitted under N.J.A.C. 6A:14-4.6. Plaintiff contends the number of students with IEPs in his classes during those years exceeded the number of such students permitted under the regulation, and the public policy underlying the regulation, and he was not certified as a special education teacher such that he could provide the required support to the special needs students. Plaintiff's argument is not supported by

the regulation's plain language or the evidence presented during the arbitration proceeding.

N.J.A.C. 6A:14-4.6 applies to the provision of supplementary instruction and resource services to students with disabilities. The regulation generally provides for "[s]upplementary instruction . . . in addition to the primary instruction for the subject being taught" as specified in a student's IEP. N.J.A.C. 6A:14-4.6(a). That is, the regulation pertains to instruction that is additional or "supplementary" to the primary instruction offered by, in this case, the general elementary education teacher. Thus, the regulation does not relieve a general elementary education teacher from teaching all the students—including those with IEPs—in his or her class. To the contrary, the regulation contemplates the provision of certain services as a supplement to the general education teacher's responsibility to teach all the students in the class.

Indeed, the regulation contemplates only that students with IEPs shall— assuming the IEPs require it—be provided with supplementary instruction provided by certified special education teachers. The regulation does not require that a teacher providing supplementary instruction be certified as a special education teacher. Supplementary instruction to a student with a disability may be provided by a teacher "certified either for the subject or the level in which

the subject is given." N.J.A.C. 6A:14-4.6(c). Thus, plaintiff's certification as an elementary school teacher allowed him to provide supplementary instruction to students with disabilities as permitted by the students' IEPs. Ibid.

The regulation also governs the provision of in-class and pull-out instruction resource programs for students with disabilities. In pertinent part, the regulation provides that "[i]n-class resource programs and pull-out replacement resource programs are programs of specialized instruction organized around a single subject and are provided to students with disabilities[.]" N.J.A.C. 6A:14-4.6(d). That special instruction must be provided by "an appropriately certified teacher of students with disabilities." Ibid. The in-class and pull-out resource programs "shall offer individual and small group instruction to students with disabilities . . . in a general education class or in a pull-out classroom." N.J.A.C. 6A:14-4.6(e). As such, the regulation provides for the provision of in-class services by a certified special education teacher "in a general education class" that is taught by a general elementary school teacher such as plaintiff.

The provision of in-class and pull-out resource programs by a certified teacher of students with disabilities does not relieve a general education teacher without a special education certification from the obligation to prepare for, and

effectively teach, students with disabilities. The regulation expressly provides that "[t]he general education teacher <u>shall have primary instructional responsibility</u> for the student [with a disability] in an in-class resource program unless otherwise specified in the student's IEP."[7]   N.J.A.C. 6A:14-4.6(i) (emphasis added). The regulation further requires that students with IEPs providing for "an in-class resource program . . . shall be included in . . . all regular class activities as deemed appropriate in the student's IEP." <u>Ibid.</u> Those regular class activities are provided by the class's general education teacher who, as plainly stated in the regulation, <u>see</u> N.J.A.C. 6A:14-4.6(i), has "primary instructional responsibility" for those students.

Contrary to plaintiff's claim, the regulation also does not place a limit on the number of students with disabilities that may be placed in a general elementary school class, like those taught by plaintiff during the 2017-2018 and 2018-2019 school years. Instead, the regulation limits the number of students that may be included in a "group" of students within a particular resource

---

[7] Plaintiff does not argue, and the record does not show, that the IEPs of any of the students in his classes during the 2017-2018 and 2018-2019 school years "otherwise specified" plaintiff should not have "primary instructional responsibility" for those students. Applying simple logic to the plain language of N.J.A.C. 6A:14-4.6(i), the record establishes plaintiff had primary instructional responsibility for all the students in his classes, including those whose IEPs required in-class resource programs.

program.  N.J.A.C. 6A:14-4.6(m).  For example, the regulation provides that "[t]he maximum number of students with disabilities that shall receive an in-class resource program shall be eight at the pre-school or elementary level[.]" N.J.A.C. 6A:14-4.6(n).  The maximum number of students that may be placed in a group for a pull-out replacement resource program at the pre-school or elementary level is six without an aide.  N.J.A.C. 6A:14-4.6(m).  Plaintiff does not argue, and the record does not establish, that in either school year, there were any groups of students in an in-class resource program or pull-out replacement resource program that exceeded the limits imposed by the regulation.

The regulation also does not alter or modify plaintiff's obligation to provide effective teaching to all the students in his classes, including those with disabilities who may otherwise have been entitled under the regulation to supplementary instruction, or in-class and pull-out replacement resource programs by "appropriately certified teacher[s] of students with disabilities" as required by the students' IEPs.  N.J.A.C. 6A:14-4.6(d).  At all times, plaintiff served as the general elementary education teacher for all the students in his classes, including those students in his class who had special needs and IEPs. N.J.A.C. 6A:14-4.6(i).  And, again, although ignored by plaintiff in his arguments on appeal, there is no evidence the evaluators assessed his teaching

34

performance based on standards applicable to certified special education teachers.

In sum, there is nothing in the regulation on which plaintiff relies that rendered plaintiff's assignment to those classes—and the evaluations he received for his teaching during the 2017-2018 and 2018-2019 school years—unlawful. Thus, plaintiff's claim he was not qualified to teach the classes because they included what he perceived to be too many students with disabilities and IEPs is not supported by, and is rather undermined by, the regulation and the evidence concerning the evaluations the arbitrator found credible.[8] We therefore discern

---

[8] We observe the evidence presented to the arbitrator concerning the number of students with disabilities and attendant IEPs in plaintiff's classes during the 2017-2018 and 2018-2019 school years is vague, contradictory, and imprecise. In any event, plaintiff's claims about the number of students with IEPs in his classes is inconsequential because it ignores that any proper assessment of the educational needs of a student with disabilities under the regulation is dependent on the student's IEP. See N.J.A.C. 6A:14-4.6(e) (providing "[w]hen a resource program is provided, it shall be specified in the student's IEP"). Thus, merely citing, or estimating as plaintiff does here, the number of students with IEPs in a class says nothing about the students' actual needs in the classroom or the concomitant requirements for both a general education teacher or special education teacher, even assuming the latter is required.

We recognize the IEPs of some of the students in plaintiff's 2017-2018 and 2018-2019 classes are included in the appendix on appeal, but the testimony during the arbitration about the IEPs is limited, plaintiff offers no assessment of the IEPs, and our own analysis of the IEPs does not demonstrate any violation of the regulation or establish that plaintiff was not responsible to teach all the

no basis to reverse the court's determination the arbitration award was not procured by undue means. For those reasons, we affirm the court's order confirming the arbitration award and dismissing plaintiff's complaint.

We add only that even had plaintiff shown the Board's assignment of plaintiff to the classes during the three school years and the resultant evaluations were arbitrary and capricious, which he did not, under N.J.S.A 18A:6-17.2(a)(4) based on the student composition of the classes, we would nonetheless affirm the court's order. That is because a finding that a board's action is arbitrary and capricious under N.J.S.A. 18A:6-17.2(a)(4) does not end the inquiry. Where such a determination is made, the arbitrator must then determine if the facts supporting the arbitrary and capricious finding "materially affected the outcome of the evaluation[s]" on which the tenure charges are based. N.J.S.A. 18A:6-17.2(b). And, if those facts "did not materially affect the outcome of the evaluation, the arbitrator shall render a decision in favor of the board and the [teacher] shall be dismissed." N.J.S.A. 18A:6-17.2(b).

---

students in the classes in his role as the general education teacher such that either his assignment to teach the classes or the evaluations of his performance in teaching the classes was arbitrary or capricious under N.J.S.A. 18A:6-17.2(a)(4).

Although unnecessary to his final decision because he did not find the Board acted arbitrarily or capriciously in assigning plaintiff to the classes or in relying on the resultant evaluations, the arbitrator considered plaintiff's claims that his evaluations were improper and adversely affected due to the non-English speaking students in the 2016-2017 class and the students with IEPs in his 2017-2018 and 2018-2019 classes. The arbitrator further determined those claims, and the facts attendant to them, did not materially affect the outcome of plaintiff's evaluations. That determination, which is supported by the arbitrator's findings of fact founded on substantial credible evidence, required the affirmance of arbitrator's decision sustaining the tenure charge and upholding plaintiff's dismissal under N.J.S.A. 18A:6-17.2(b), even if the Board had otherwise acted in an arbitrary and capricious manner.

To the extent we have not expressly addressed any other arguments made on plaintiff's behalf, we have considered them and determined they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

37

A-0208-21